## CHAUNCEY BARNARD *v.* JOHN B. MONNOT.

The duty of a real estate broker consists in bringing the minds of the vendor
and of the vendee to an agreement, at which time he is entitled to his com-
pensation as such broker, whether the contract between the vendor and
vendee be reduced to writing or not.

HUNT, J.   The plaintiff brought his action in the Supreme
Court against the defendant, to recover his compensation as
a real estate broker, amounting to $2,500, in effecting the
sale of the "Hippodrome" property in the city of New
York.   On the trial, the plaintiff was nonsuited.   The judg-
ment was affirmed at the General Term of the first district.
The facts may be stated as follows: The plaintiff, a real
estate broker in the city of New York, was employed by the
defendant to negotiate a sale of certain real property of
the defendant, known as the Hippodrome property, for the
price of $250,000.

He brought his negotiation to a successful issue on the 31st
of May, 1855, when the defendant and one Amos R. Eno
came to an agreement which was complete in all its terms
for the sale and purchase of the property.   The defendant
agreed to sell to Eno the Hippodrome property for $250,000,
and Eno agreed to buy it at that price, to be paid as follows:
$20,000 in cash; No. 555 Broadway at $120,000, and 74
Broadway at $110,000.   To these terms both parties were
agreed.

The parties having agreed upon the terms of their bargain,
set out for the office of Mr. Wetmore, Eno's lawyer, to put
the agreement in writing.   They stopped on the way at the
office of Mr. Logan, Monnot's lawyer, and stated to him the
terms of the agreement.   At Mr. Wetmore's office the terms
were again stated, and it was arranged that Mr. Logan should
draw the contract.

Subsequently Mr. Logan, on behalf of Monnot, objected to
certain leases which were on the pieces of property which
Monnot was to receive, though they had been discussed and

agreed upon by Monnot and Eno. Upon this objection being stated, Eno offered to remove the leases and give the property clear of them.

Eno was ready to carry out the contract, and no further objection was made on account of the leases. Monnot subsequently declined to perform the contract, alleging the unwillingness of his wife to its completion. Another bargain was therefore made and completed between Eno and the defendant, by which Eno purchased of the defendant a portion of the Hippodrome property, to the value of $170,000, and paid him for it, by 74 Broadway, and assuming certain mortgages.

The plaintiff was nonsuited upon the ground that he could not maintain an action for his compensation until the agreement for the sale of the property had been reduced to writing and signed by the parties. The General Term by their written opinion, concurred in this view of the law.

I think the decision was erroneous. The duty of the broker consisted of bringing the minds of the vendor and the vendee to an agreement. He could do no more. He had no power to execute a contract, to pay the money for the one side, to convey the land on the part of the other, or to compel the performance by either of their duties. The plaintiff produced a purchaser, willing and ready to accept the terms of the defendant, and able to perform the obligation on his part. He had then earned his commissions, and it would be a singular conclusion of the law that the refusal of his employer to complete the bargain should destroy his right to them. His right to the commissions depended upon the successful performance of the service, and upon nothing else. On the one hand, however much time he might devote to the interests of the defendant, unless he was successful in finding a purchaser, he was entitled to no compensation, and on the other his right was perfect, so soon as that condition was performed. (*Jones* v. *Bierling*, 31 N. Y., 462; *McGaroch* v. *Wuralief*, 20 How. U. S., 221; *Koch* v. *Emmsley*, 22 id., 69.) In the case last cited, as in the present, the broad ground was assumed " that no contract of this character can

be specifically enforced unless it has been fully executed." (p. 73.) The court says: "Where the vendor is satisfied with the terms made by himself through the broker to the purchaser, and no valid objection can be stated to the contract, it would seem to be clear that the commission of the agent was due, and ought to be paid. It would be a novel principle, if the vendor might capriciously defeat his own contract with his agent, by refusing to pay him when he had done all that he was bound to do. The agent might well undertake to procure a purchaser, but this being done, his labor and expense could not avail him, as he could not coerce a willingness to pay the commission which the vendor had agreed to pay. Such a state of things could only arise from an express understanding that the vendor was to pay nothing unless he chose to make the sale."

Judgment should be reversed and a new trial ordered.

Judgment accordingly.